IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LINDA SNOW COLLINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV224 |
| | ) | |
| NANCY BERRYHILL, | ) | |
| Acting Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Linda Snow Collins brought this action to obtain review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has before it the certified administrative record[1] and cross-motions for judgment.

### I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI in January of 2012 alleging a disability onset date of September 1, 2009; her alleged onset date was subsequently amended to June 1, 2012. (Tr. 17, 162-65, 389-98, 480.) The applications were denied initially and upon reconsideration. (*Id.* at 17, 137-40, 143-47, 427-30.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on January 13, 2014. (*Id.* at 130-33, 462-84.) After the hearing,

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 9.)

ALJ Michelle D. Cavadi determined that Plaintiff was not disabled. (*Id.* at 40-52.) Plaintiff requested review from the Appeals Council, and the Appeals Council subsequently vacated the hearing decision and remanded the matter to the ALJ. (*Id.* at 34-36.) The Appeals Council determined that the ALJ may not have reviewed Plaintiff's entire record since there were inconsistencies between Plaintiff's electronic record and the paper file. (*Id.*) A second hearing was held before ALJ Cavadi on August 10, 2015. (*Id.* at 432-61.) ALJ Cavadi again determined that Plaintiff was not disabled. (*Id.* at 17-33.) The Appeals Council denied a request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 7-9.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "In reviewing for substantial evidence, [the Court] do[es] not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the sequential analysis, which is set forth in 20 C.F.R. §§ 404.1520 and 416.920, to ascertain whether the claimant is disabled. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the June 1, 2012 amended alleged onset date. (Tr. 20.) The ALJ next found the following severe impairments at step two: history of compression fractures and osteoporosis, mild scoliosis, degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disorder, and borderline intellectual functioning with reading/learning disorder. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 24.)

The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that she could perform medium work with the following limitations:

> she can lift up to fifty pounds occasionally and twenty-five pounds frequently. She can frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to hazards, fumes, dust, gases, and areas with poor ventilation. She can never drive an automobile for the completion of job tasks. She is limited to the performance of unskilled work that is simple, routine, and repetitive in nature with routine changes in the work environment.

---

[2] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his [or her] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.*

(*Id.* at 27.) At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.* at 31.) Last, at step five, the ALJ determined that there were jobs in the national economy that Plaintiff could perform. (*Id.* at 32.) Consequently, the ALJ concluded that Plaintiff was not disabled. (*Id.*)

## IV. ISSUES AND ANALYSIS

Plaintiff raises two issues in her brief. First, Plaintiff contends that the ALJ failed to properly account for Plaintiff's moderate limitations in concentration, persistence, or pace ("CPP") in her RFC. (Docket Entry 12 at 6-11.) Second, Plaintiff contends that the ALJ erred at step five by failing to identify the apparent conflict between the Vocational Expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT") description of the job requirements for the jobs identified by the VE. (*Id.* at 11-19.) For the following reasons, the Court disagrees.

### A. The ALJ Adequately Accounted for Plaintiff's Limitations in CPP.

First, Plaintiff contends that the ALJ's RFC finding failed to account for her mental limitations in CPP. (Docket Entry 12 at 9.) This objection lacks merit.

More specifically, in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), the Fourth Circuit determined that remand was appropriate for three distinct reasons, one of which is relevant to the analysis of this case. The Fourth Circuit remanded in *Mascio* because the hypothetical the ALJ posed to the VE, and the corresponding RFC assessment, did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining CPP. *Mascio*, 780 F.3d at 637-38.

4

The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why moderate difficulties in CPP did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

In the instant matter, the ALJ reviewed all of the medical evidence and determined that Plaintiff had moderate limitations in CPP. (Tr. 27.) "Pursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D.Md. May 19, 2015) (unpublished).

The Court here concludes that the ALJ explained, and supported with substantial evidence, her decision to only limit Plaintiff to unskilled work that is simple, routine, and repetitive in nature with routine changes in the work environment. Specifically, the ALJ explained that there was very little evidence of Plaintiff's intellectual abilities outside of a July 8, 2015 psychological evaluation by Ms. Nancy Sizemore, MA, LPA. (Tr. 29 referencing 381-86.) During the evaluation, Plaintiff was diagnosed with borderline intelligence and a specific

5

learning disability in reading comprehension. (*Id.* at 383-84.) Plaintiff also testified during her most recent hearing that she was not good at reading in school and she was not good at understanding what she read. (*Id.* at 438, 451-52.) The ALJ noted that Plaintiff's testimony was inconsistent with her previous testimony that she enjoyed reading some during the day. (*Id.* at 29 referencing 475.) The ALJ further noted that despite Plaintiff's impairments, she was able to work off and on as a presser for approximately twenty-five years and stopped working most recently because of the closing of her employer's business. (*Id.* at 29.) Considering all of this, the ALJ accepted Ms. Sizemore's findings of borderline intelligence with some reading difficulties (*see id.* at 30),[3] and concluded that "[Plaintiff's] intellectual issues have also been provided for in her residual functional capacity by limiting her to unskilled work, as she has a long work history of performing unskilled work, thus demonstrating her intellectual ability to perform such work." (*Id.* at 31.) The Court concludes that the ALJ's review of the evidence and the above-quoted assessment from the ALJ demonstrates that the RFC findings properly accounted for Plaintiff's limitations in CPP. Consequently, Plaintiff's contention that the RFC runs afoul of *Mascio* is without merit.

### B. Substantial Evidence Supports the ALJ's Step-Five Determination.

Relying on VE testimony in response to a hypothetical from the ALJ, the ALJ concluded that an individual with Plaintiff's RFC could work as a store laborer, an industrial cleaner, and a dining room attendant. (Tr. 32, 455-57.) Plaintiff argues that the DOT job descriptions for these jobs exceed her RFC limitations; as such, the VE failed to identify these

---

[3] The ALJ gave the opinion of Ms. Sizemore little weight because she only evaluated Plaintiff on one occasion and Plaintiff also demonstrated her ability to work over the course of several years. (Tr. 31.)

6

apparent conflicts between her opinion and the DOT, and the ALJ failed to identify and resolve these apparent conflicts. (Docket Entry 12 at 12-19.)

This issue is governed by SSR 00-4p, which provides that:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.

. . . .

> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

*See* SSR 00-4p, 2000 WL 1898704, at *2-4 (2000).

Beyond this, the Fourth Circuit in *Pearson v. Colvin*, 810 F.3d 204, 208-09 (4th Cir. 2015), interpreted SSR 00-4p to place an "affirmative duty" on the ALJ to independently "identify conflicts between the [VE's] testimony and the [DOT]." It further suggested that the ALJ's duty to address an apparent conflict included "simply compar[ing] the express language of the [DOT] and the [VE's] testimony." *Id.* at 209. "An ALJ has not fully developed the record if it contains an unresolved conflict between the [VE's] testimony and the [DOT]." *Id.* at 210.

Here, the jobs of a store laborer and an industrial cleaner both include the possibility of driving a vehicle to meet the job requirements. *See* store laborer, DOT 922.687-058, 1991 WL 688132 (4th Ed. Rev. 1991) ("May drive vehicle to transport stored items from warehouse

to plant or to pick up items from several locations for shipment."); industrial cleaner, DOT 381.687-018, 1991 WL 673258 (4th Ed. Rev. 1991) ("May operate industrial truck to transport materials within plant."). The hypothetical presented to the VE included a restriction that there be no driving of an automobile for completion of the job task (Tr. 456), which was also included in Plaintiff's RFC findings. (*Id.* at 27 ("[Plaintiff] can never drive an automobile for the completion of job tasks.")).

Even if the ALJ failed to identify and resolve any apparent conflicts between the DOT and the VE's testimony as to the jobs of a store laborer and an industrial cleaner,[4] any such failure is harmless error as there was at least one other job identified that Plaintiff could perform: dining room attendant. The VE testified that, as to the occupation of a dining room attendant, there existed approximately 223,000 jobs in the national economy. (*Id.* at 456.) Plaintiff argues that "an expectation to perform [11] separate job tasks [for the job of a dining room attendant] is inconsistent with a limitation to 'simple, routine, and repetitive' tasks as well as a limitation to 'routine changes in the work environment' as identified in the ALJ's RFC." (Docket Entry 12 at 15.) Plaintiff's argument, however, is unpersuasive. The job of a dining room attendant is at reasoning level two, which comports with the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DOT, 381.687-018, 1991 WL 673258 (discussing "Industrial Cleaner" job demands); DOT App'x C.

---

[4] Plaintiff also identified other conflicts between the DOT job descriptions and the VE's testimony regarding the jobs of a store laborer and an industrial cleaner. (*See* Docket Entry 12 at 13-15.)

8

As such, the question is whether there is an apparent conflict between Plaintiff's RFC (which, in pertinent part, was limited to unskilled work that is simple, routine, and repetitive in nature with routine changes in the work environment) and jobs with a reasoning level of two. The Fourth Circuit has not addressed this matter in a published opinion, but recently this Court discussed in detail the compatibility issue of limitations to simple, routine, and repetitive tasks ("SRRTs") and reasoning level two jobs. *See* Recommendation, *Lawrence v. Colvin*, Civil Case No. 1:16CV1310 (M.D.N.C. Nov. 17, 2017), ECF No. 14 at 3-5.[5] Considering the position of the majority of courts in the Fourth Circuit that SRRTs are not inconsistent with reasoning level two jobs (*see id.* (collecting cases)), the Court concludes here that Plaintiff's limitation to unskilled work that is simple, routine, and repetitive in nature with routine changes in the work environment is not inconsistent with reasoning level two jobs. As such, the ALJ did not fail to identify and resolve an apparent conflict regarding the job of a dining room attendant, because there was no such conflict.[6] Since the ALJ's finding that Plaintiff could make a successful adjustment to other work that existed in significant numbers in the national economy, Plaintiff's argument fails.

---

[5] *See also Green v. Colvin*, Civil Case No. 1:10CV561, 2013 WL 3206114, at *8-9 (M.D.N.C. June 24, 2013) (unpublished) (Webster, M.J.) *adopted by* 2013 WL 4811705 (M.D.N.C. Sept. 9, 2013) (unpublished) (Eagles, J.).

[6] The Court recognizes the Fourth Circuit's recent holding in an unpublished case, "that there is an apparent conflict between an RFC that limits [the claimant] to one-to-two step instructions and GED Reasoning Code 2, which requires the ability to understand detailed instructions." *Henderson v. Colvin*, 643 Fed. App'x 273, 276-77 (4th Cir. 2016). *Henderson* is inapplicable in this case, however, because it only addressed a mental RFC limiting a claimant to one-to-two step instructions, not to SRRTs.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's motion for summary judgment (Docket Entry 11) be **DENIED**, Defendant's motion for judgment on the pleadings (Docket Entry 13) be **GRANTED** and the final decision of the Commissioner be upheld.

                                                       Joe L. Webster
                                                     United States Magistrate Judge

January 3, 2018
Durham, North Carolina